Below is a Memorandum Decision of the Court.

_____
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 22-40706-MJH |
| Billie Dale Shippy and Carla Dee Shippy, | |
| Debtors. | **Memorandum Decision on Debtors' Motion to Avoid Lien** |

This matter came before the Court on the Motion to Avoid Lien ("Motion") filed by Billie Dale Shippy and Carla Dee Shippy ("Debtors") on August 4, 2022. The Debtors seek to avoid, on exemption impairment grounds, the lien ("Lien") held by The Boeing Company ("Boeing") against Debtors' real property located at 4601 143rd Street East, Tacoma, Washington ("Real Property"). Boeing objected to the motion on the grounds that the Lien is a statutory lien and thus not subject to avoidance under 11 U.S.C. § 522(f)(1).[1]

The Court heard the motion on September 12, 2022. At the hearing, the parties requested the opportunity to file additional briefs and have the Court resolve the motion on the pleadings. The Court having considered the arguments of counsel and pleadings in the record hereby makes the following findings of fact and conclusions of law.

## I. BACKGROUND AND FINDINGS OF FACT

The Debtors filed for Chapter 13 relief on June 10, 2022. The Debtors' schedules reflect that the Real Property had a value of $441,169.00 as of the petition date. Schedule A, ECF

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Federal Bankruptcy Code, 11 U.S.C. § 101–1532, and to the Federal Rules of Bankruptcy Procedure, 1001–9037.

No. 1. At the time of the petition, the Real Property was encumbered by a deed of trust in the amount of $141,709.00. Schedule D, ECF No. 1. The Debtors claimed a homestead exemption in the Real Property in the amount of $299,460.00.[2] Schedule C, ECF No. 1. The Debtors reported Boeing's Lien against the Real Property in the amount of $71,635.19 and indicated that the nature of the Lien was a "judgment lien from a lawsuit." Schedule D, ECF No. 1.

The debt underlying the Lien stems from Mr. Shippy's receipt of workers' compensation benefits to which he was not entitled. In their Motion, the Debtors describe a pre-petition "judgment" lien obtained by Boeing in the amount of $71,635.19 for overpayment of workers' compensation benefits, and seek to avoid that lien pursuant to § 522(f). Although described in the Motion as a pre-petition "judgment," the Lien is not represented by a traditional court-generated judgment, but rather by an Order and Notice ("L&I Order") issued by the Washington State Department of Labor and Industries ("L&I") and a Warrant for Overpaid Workers' Compensation Benefits ("Warrant"). Boeings' Resp., Ex. A, ECF No. 24. The L&I Order was issued on May 18, 2016, and, by its terms, became final sixty days later. Both the L&I Order and the Warrant were filed in the Pierce County Superior Court on May 23, 2018, and recorded in Pierce County on June 6, 2018.

In his affidavit, Mr. Shippy stated that on September 25, 2015, after his workers' compensation claim was denied, but prior to the issuance and recording of the L&I Order and Warrant, he filed a letter of protest and request for reconsideration of the denial of his claim. Shippy Aff. 3:11–19, Debtor's Brief Surrebuttal Ex. A, ECF No. 31. L&I denied Mr. Shippy's claim in an order dated October 6, 2015, and Mr. Shippy appealed that order to the Board of Industrial Insurance Appeals ("BIIA") on November 30, 2015. *See* Order Dismissing Appeal, Debtor's Brief Surrebuttal Ex. D, ECF No. 31. Mr. Shippy attended a

---

[2] Pursuant to RCW 6.13.030, the Debtors can claim a maximum homestead exemption of $508,300.00.

hearing before an industrial appeals judge on March 2, 2016, and thereafter moved to dismiss the appeal. Shippy Aff. 3:11–19, Debtor's Brief Surrebuttal Ex. A, ECF No. 31. After Mr. Shippy dismissed his appeal, and the time limit to recommence the appeal process expired, the L&I Order became final. Approximately two years later on May 23, 2018, Boeing issued and docketed the Warrant, thereby giving rise to the Lien.

## II. Discussion and Conclusions of Law

Section 522(f)(1) authorizes the avoidance of a judicial lien that impairs an exemption to which the debtor would otherwise be entitled. Section 522(f)(1) provides:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5) [.]

11 U.S.C. 522(f)(1)(A).

To avoid a lien under § 522(f), the moving party must establish the following: "(1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." *Culver, LLC v. Chiu (In re Chiu)*, 304 F.3d 905, 908 (9th Cir. 2002). A lien impairs an exemption to the extent that the sum of all liens on the property, together with the value that the debtor could claim as exempt in the absence of the liens, exceeds the value of the debtor's interest in the property if it were totally unencumbered. *See Owen v. Owen*, 500 U.S. 305 (1991).

Here, neither party disputes that the Lien is fixed on the Debtors' property. The sum of the Lien ($71,635.19); the mortgage ($141,709.00); and the claimed exemption ($299,460.00) exceeds the Real Property's value ($441,169.00). Thus, the Lien impairs the Debtors' homestead exemption and can be avoided in full if it is a judicial lien. Accordingly,

the only issue before the Court is whether the Lien is an avoidable judicial lien or an unavoidable statutory lien.

## A. Distinction Between Judicial and Statutory Liens.

The Code defines a judicial lien as a lien "obtained by judgment, levy, sequestration, *or other legal or equitable process or proceeding.*" § 101(36) (emphasis added). This definition is expansive; it contemplates more than just court judgments. While the term "judicial lien" indisputably includes liens obtained by traditional court-generated judgments, based on the plain language of the statute, it also includes liens obtained by "other legal or equitable process or proceedings." Conversely, a statutory lien is defined as a lien "arising solely by force of a statute on *specified circumstances or conditions* . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." § 101(53) (emphasis added). Therefore, in determining whether a lien is classified as a judicial or statutory lien, the focus is on the manner in which the lien arose, not the manner by which it is enforced.[3]

### *1. Caselaw*

The parties have not provided, and the Court is not aware of, any controlling caselaw within the Ninth Circuit specifically addressing this issue. The Court will therefore look to cases from other jurisdictions for guidance.

#### *a. The Requirement of Judicial or Administrative Process*

Courts in other jurisdictions have concluded that judicial liens must stem from some form of judicial or administrative process, whereas statutory liens stem directly from the statutory language. The Third Circuit Court of Appeals reached this conclusion in *In re Schick* 418 F.3d 321, 322 (3rd Cir. 2005). *Schick* dealt with the issue of whether a lien held by the New Jersey Motor Vehicles Commission was a judicial or statutory lien for the

---

[3] *See, e.g.*, *Matter of Mance*, 31 F.4th 1014 (7th Cir. 2022); *In re Schick*, 418 F.3d 321 (3rd Cir. 2005); *In re Cunningham*, 478 B.R. 346 (Bankr. N.D. Ind. 2012); *In re Ahokas*, 361 B.R. 54 (Bankr. D. Vt. 2007).

purposes of § 522(f). In that case, the court held that a New Jersey Motor Vehicle Commission certificate of debt that became a lien upon being docketed by the clerk of a court (similar to the warrant in this case) was a statutory lien, not a judicial lien. *Id.* at 330. The court reasoned that the New Jersey statute required no judicial action and the mere act of docketing the certificate by the court clerk did not make it a judicial lien. *Id.* at 326–29. In reaching its decision, the court considered whether the debt was statutorily fixed or judicially found, whether there was any judicial process required in order for the debt to be fixed, and its proximity to the fixing of the debt. *Id.* at 326–27. The court concluded that in order "for a lien to be judicial, there must be some judicial *or administrative process or proceeding that ultimately results in the obtaining of the lien.*" *Id.* at 328 (emphasis added).

In another case, the Seventh Circuit Court of Appeals concluded that a judicial or administrative process is a prerequisite of a judicial lien. *Matter of Mance*, 31 F.4th 1014 (7th Cir. 2022). In *Mance,* the court had to decide whether the City of Chicago's possessory lien on a vehicle impounded for unpaid fines was a judicial or statutory lien for the purposes of § 522(f). The court examined the City's lien program and detailed the complex "quasi-judicial" process that had to be exhausted before the possessory lien arose. *Id.* at 1019–23. That process consisted of procedures for determining liability and enforcement, including: (1) giving the vehicle owner the opportunity to contest a parking or traffic violation; (2) entering a final determination of liability upon the owner's defeat or failure to contest the violation; (3) giving the owner an opportunity to appeal the determination of liability; (4) giving the owner the ability to pay the fine for the parking or traffic violation; (5) affording the owner another opportunity to petition for a hearing on liability; (6) impounding the vehicle; and (7) entering a second determination of liability along with a determination of eligibility for impoundment. *See id.* The court held that the possessory lien was a judicial lien, reasoning that the City could not impose the lien without the

judicial or quasi-judicial procedures that led to the final determination and without the enforcement procedures that led to impoundment.

Distinguishing *Schick*, the *Mance* court noted that the underlying process giving rise to the lien in *Schick* did not require action beyond the mere docketing of the lien, whereas in *Mance,* "Chicago's administrative structures for challenging tickets and pending impoundments [were] . . . [an] essential prerequisite[] for a valid impoundment lien." *Id.* at 1023.

### b. *Timing of Judicial or Administrative Process*

In addition to the requirement of some form of judicial or administrative process, courts have also emphasized the timing of that process in relation to the creation of the lien. These courts have focused on whether the process occurs before or after the lien arose.

In one case, a Wisconsin bankruptcy court's analysis turned on the timing of the process in relation to the creation of the lien. *See In re Beck*, No. 15-29541-SVK, 2016 WL 489892 (Bankr. E.D. Wis. Feb. 5, 2016). In *Beck*, the Wisconsin Department of Workforce Development filed a warrant in Milwaukee County and obtained a lien to recover overpaid unemployment benefits stemming from the debtor's misrepresentations. The debtor moved to avoid the department's secured claim pursuant to § 522(f). *Id.* at *3. The court distinguished between statutory and judicial liens created by Wisconsin statutes, noting that some statutes "create a lien by their very texts;" therefore, "the statutes themselves create the liens automatically, without any judicial, legal or other [process, which] is the essence of a statutory lien." *Id.* The court held that the lien at issue was a judicial lien, not a statutory lien reasoning that, in contrast to statutory liens, "[the department's] warrant . . . involved process, including an administrative determination of whether the cause of the overpayment was the Debtor's false statements or misrepresentations." *Id.*

This process involved: (1) an initial determination by the Workforce Department; (2) a copy of the determination being sent to the debtor; (3) the ability to dispute the obligation; (4) the opportunity for a hearing conducted by an appeal tribunal; (5) the

ability of the appeal tribunal to affirm, reverse, or modify the determination; (6) the ability to seek review of the appeal tribunal's decision; and (7) the opportunity to seek judicial review in circuit court. *Id.* at *1. Only after that process concluded could the Workforce Department issue a warrant to the circuit court clerk, which would be docketed and "considered in all respects as a final judgment constituting a perfected lien." *Id.* at *2. The court concluded that "the existence of [these] procedures in the statutory scheme support[ed] the conclusion that [the lien was] a judicial lien, not a statutory lien." *Id.* at *3.

In another case, *In re Smith*, 401 B.R. 674 (Bankr. E.D. Pa. 2009), the court had to determine whether a Pennsylvania workers' compensation statute created a judicial or statutory lien. In *Smith*, an injured worker filed a certified copy of his claim petition with the prothonotary and obtained a lien on the real property of an employer who did not have workers' compensation insurance at the time of the worker's accident. The *Smith* court, relying on *Schick*, concluded that the lien was statutory because it arose automatically under the Pennsylvania Workers' Compensation Act, without the need for any judicial action beyond the ministerial task of docketing the judgment. The court reasoned that the Pennsylvania Workers' Compensation Act created the lien automatically and then allowed for administrative proceedings *thereafter* to increase, revise, or reduce the claimed amount. *Id.* at 684. In its reasoning, the court contrasted the Pennsylvania statute with a New Jersey statute stating:

> The New Jersey statute, unlike its Pennsylvania counterpart, permits the creation of a lien on real property *only after a full administrative decision is rendered against the employer.* Section 428 of the Pennsylvania Workers' Compensation Act, on the other hand, provides for the immediate creation of the judgment and its resultant lien on real property simply upon the filing of a claim petition with the prothonotary. No judicial, quasi-judicial, or administrative determination of liability or amount of compensation and damages is made until after the claim petition has already been filed as a judgment.

*Id.* at 686 (emphasis added).

In short, the court reasoned that the lien under the Pennsylvania statute was statutory because the administrative proceedings occurred after the lien arose, whereas the lien under the New Jersey statute was judicial because the administrative proceedings occurred before the lien arose.

### 2. *Process of Obtaining a Lien Under Washington Law*

The L&I Order and Warrant are not traditional court-generated judgments. Therefore, the Court's analysis turns to the question of whether the Lien results from "other legal or equitable process or proceedings" or "solely by force of a statute on specified circumstances or conditions."

Under Washington law, the process for obtaining a lien for overpayment of workers' compensation benefits starts with an injury. First, the injured worker must notify the employer of the injury and file a claim with either the self-insured employer or L&I. RCW 51.28.010; RCW 51.28.020. Once the worker reports the injury to the employer, the employer has a duty to report the injury to L&I. RCW 51.28.025. If the self-insured employer denies the claim, the employer must give the injured worker written notice "clearly informing the claimant of the reasons [for the denial] and that the director [of L&I] will rule on the denial." RCW 51.32.190. Next, L&I reviews the proceeding leading up to the denial and reviews any additional information. After its review, L&I decides to either approve or deny the claim based on its investigations and medical evidence. RCW 51.32.190(5). If L&I denies the worker's claim, the worker has the right to request reconsideration or appeal L&I's decision to the BIIA within sixty days. RCW 51.52.050(2)(a). If the decision is not contested within sixty days, the order becomes a final order—a prerequisite to the ability to file a warrant with the court clerk and obtain a lien. *See* RCW 51.52.050(1)–(2)(a); RCW 51.32.240(6).

If the decision is appealed to the BIIA, an industrial appeals judge holds a hearing and allows the parties to present evidence related to the issues raised in the notice of appeal. RCW 51.52.102; RCW 51.52.095. After evidence has been presented at the

hearing, the industrial appeals judge then enters a proposed decision and order in writing containing findings and conclusions on each contested issue. The BIIA mails the proposed decision and order to the parties, and the parties have twenty days to file a petition for appeal on the proposed decision. RCW 51.52.104. If a petition is not filed within twenty days, or if the petition is denied, the proposed decision and order become final. *Id.* If the BIIA grants the petition, a panel of BIIA judges reviews the proposed decision and issues a final decision and order. RCW 51.52.106. Within thirty days of the BIIA denying the petition for appeal, or within thirty days of the entry of the BIIA's final decision and order, a party can appeal the BIIA's decision to the superior court. RCW 51.52.106. If a party does not appeal the decision to the superior court within thirty days, the BIIA's order becomes final. Thus, the judgment and order become final only after there is no further ability to contest their validity.

After the judgment becomes final, the employer is then authorized to file a warrant with the superior court. RCW 51.32.240(6). In relevant part, the statute authorizing the filing of the warrant provides:

> *In the event such an order becomes final* . . . the self-insurer may file with the clerk . . . a warrant in the amount of . . . the unpaid overpayment and/or penalty plus interest accruing from the date the order became final. The clerk . . . shall immediately designate a superior court cause number for such warrant and [enter the warrant] in the judgment docket . . . The amount of the warrant as docketed shall become a lien . . . the same as a judgment in a civil case docketed in the office of such clerk.

RCW 51.32.240(6) (emphasis added).

**B. Analysis of the Nature of the Lien at Issue.**

Like the statutes in *Mance* and *Beck*, the Washington statutory scheme provides for a process that occurs before a lien arises. That process consists of: (1) an initial determination by the self-insurer; (2) a copy of the determination being sent to the worker and L&I; (3) the ability to dispute the self-insurer's denial with L&I; (4) the opportunity to appeal L&I's decision to an industrial appeals judge; (5) the opportunity to present

evidence at a hearing conducted by an industrial appeals judge; (6) the opportunity to appeal the industrial appeals judge's decision to an appeal tribunal; (7) the ability of the appeal tribunal to affirm, reverse, or modify the determination; (8) the ability to seek review of the appeal tribunal's decision; and (9) the opportunity to seek judicial review in superior court.

In sum, the Washington statutes provide an extensive process that determines or adjudicates the existence of an overpayment and the validity of the amount owed. This process must be completed before an order becomes final, and a final order is a prerequisite of the self-insurer's ability to file a warrant with the court clerk. Because the process outlined in the statutes occurs prior to the ability to issue the warrant on which the lien is predicated, the resulting lien arises from a "legal or equitable process or proceeding" within the meaning of the Code's definition of a judicial lien. Accordingly, the Court concludes that the Lien is a judicial lien and is avoidable under § 522(f).

### C. Application to the Debtors' Motion to Avoid the Lien.

As discussed above, the Lien is fixed on the Debtors' property, impairs the Debtors' homestead exemption, and is a judicial lien within the definition of § 101(36). Accordingly, the Debtors may avoid the Lien under § 522(f).

### III. CONCLUSION

Based on the foregoing, the Court concludes that the Lien is a judicial lien and finds that the Debtors are entitled to avoid the Lien in full.

/ / / End of Memorandum Decision / / /